UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                        CASE No. 8:03-CR-8-T-23TGW

GEORGE MELQUIADES

---

## REPORT AND RECOMMENDATION

In 2009, the defendant filed a motion seeking the return of personal property, which he alleges was seized by law enforcement when he was arrested in 2003 (Doc. 275). The Government denies that it has any of the defendant's property. After conducting an evidentiary hearing on the defendant's allegations, I recommend that the motion be denied because the evidence shows that, at most, law enforcement seized three of the defendant's missing belongings, all of which were properly destroyed in 2005 in accordance with agency procedures.

I.

On January 13, 2003, the Drug Enforcement Administration (DEA) executed a search warrant at 919 Lake Jessamine Drive in Orlando.

Florida, to seize monetary instruments and money which were the proceeds of drug trafficking activity (see Case No. 8:03-M-013-TBM). The defendant was arrested concurrently at the residence, pursuant to a federal arrest warrant, for his alleged participation in drug trafficking (see Docs. 1, 3, 8).

Following a jury trial, the defendant was adjudicated guilty in 2004 of crimes involving the possession, and distribution, of methamphetamine (Docs. 38, 124, 164). He was sentenced to 235 months in prison and five years of supervised release (Doc. 164). The defendant's appeal and motion to vacate his sentence pursuant to 28 U.S.C. 2255 were denied (see Docs. 253, 265).

In 2009, the defendant filed a Motion for Return [of] Property Under Federal Rules of Criminal Procedure 41(g) (Doc. 275), alleging that, at the time of his arrest, law enforcement seized from the residence the following personal property:

> One American Tourister Book bag containing accounting books of the Movant Jewelry Business ... Five 14K gold men rings, assorted sizes and colors (stones), six 14K gold figeros link chains, six 14k gold bracelets, twelve 14k gold women rings, assorted sizes and colors (stones), six 14K gold earrings, assorted styles, One 14K gold

> Guadalupe medallion, One personal 14K gold
> chain, One personal 14K gold figeros bracelet, One
> gold tone Seiko wat[c]h, One 14K gold San Lazaro
> statue, One Big Screen TV set, One five holder
> DVD player, One VCR, One Big Boom Box, Three
> pair of dress boot[]s, Three pair of dress shoes, One
> Leather Jacket, One designed Jacket, One Cell
> phone, Two Sports Jackets, Twelve Guallaveras
> Shirts, [and] Two long sle[e]ve Guallaveras shirts.

The Government responded, among other things, that the defendant failed to

present evidence that law enforcement had seized these items  (Doc. 279).

The district court subsequently denied the motion (Doc. 280).  Upon appeal,

the matter was reversed in order to obtain evidence regarding the defendant's

allegations that law enforcement seized this property (Doc. 286).  The motion

was referred to me to conduct an evidentiary hearing and issue a report and

recommendation as to its disposition (Doc. 287).

On January 20, 2011, an evidentiary hearing was conducted on

the defendant's Motion for Return of Property (see Doc. 293).  The defendant

appeared at the hearing, pro se.[1]  Government counsel, and DEA Special

Agent Scott Oliver, were present on behalf of the United States.

The defendant, who is currently serving his prison sentence at

Forest City Correctional Center in Arkansas, testified first.  The defendant

stated that he was arrested in January 2003 at 919 Jessamine Drive, in

Orlando, Florida, at a home where he lived in a rented bedroom. The landlord,

and two other men who rented bedrooms, also resided in the home.

The defendant testified that he had personal and business

possessions in his rented bedroom.  Specifically, the defendant testified that

missing from his bedroom after his arrest were his personal jewelry; a small

inventory of jewelry from his side business of jewelry sales; clothing, such as

shoes, suits, and jeans; a large Mitsubishi television; a DVD player; a cellular

telephone; office equipment, including a calculator, legal pads, and receipts;

and a big bag with documents, such as income tax returns, insurance and

employment records, and papers from a jewelry factory. The defendant stated

---

[1]At the beginning of the hearing, the defendant asked for the assistance of counsel.
That request was denied.  I explained to the defendant that he did not timely request
appointment of counsel. I also told him that he is not entitled to appointed counsel because
this is a civil matter, which is not sufficiently complex to justify the appointment of
counsel.  He declined an opportunity to retain counsel on his own.

that his memory had faded over time, and that a written inventory of his property, which he brought with him from prison for this hearing, had been misplaced in transit.[2]

The defendant testified that, after his arrest, he tried to locate his possessions. Thus, the defendant stated that he attempted, unsuccessfully, to contact his landlord about his belongings, and that he had asked his attorneys what happened to his property. The defendant also testified that, at the time of Hurricane Ivan (which was in September 2004), he wrote a detailed inventory of his property, which he sent to a brother and sister in South Florida, and possibly gave to his appellate counsel, Darlene Barror.[3] The defendant stated that the written inventory matches the missing items listed in the motion.

The defendant testified initially that he does not know who took his property. In particular, when I asked the defendant why he believes the

---

[2]The defendant testified that he gave this, and other paperwork, to the U.S. Marshal in Oklahoma, while en route to this hearing. The defendant stated that he was told the paperwork would be sent to Tampa, but he did not receive it.

[3]To the defendant's knowledge, his counsel did not inquire with the Government regarding his property.

Government, instead of his landlord, took his property, he stated candidly, "I don't know."

The defendant subsequently stated that he believes the Government stores a person's belongings after he is arrested. Additionally, the defendant testified, vaguely, that he had read a Supreme Court opinion in which a task force agent said property was removed from the defendant's bedroom, and that the task force either did not know what, or where, that property was.

The defendant did not proffer any other witnesses or evidence in support of his motion. The Government then called Scott Oliver, a task force agent employed by the DEA.

Agent Oliver stated that he was a co-case agent who participated in executing the search warrant at the residence. He testified that law enforcement executed the search warrant with the intention of seizing items related to drug trafficking. Agent Oliver explained that all of the items law enforcement seized from the residence are listed in DEA Form 6, the Report

of Investigation (see Gvt. Ex. 1, see also Gvt. Ex. 3).[4]  Agent Oliver stated

that he prepared that report, and emphasized that, to his knowledge, there was

nothing seized from the residence that is not reflected in the report.

Agent Oliver stated that he compared the property listed as

missing in the defendant's motion, with the items seized by the Government.

In this connection, Agent Oliver thought that the JVC compact stereo,

miscellaneous documents, and Nokia cellular telephone that were seized by

law enforcement (see Gvt. Ex. 1, Exs. N-51, N-52, N-56) could be the boom

box, documents, and cellular telephone listed in the defendant's motion as

missing property.[5]

_____

[4]The Report of Investigation (Gvt. Ex. 1) documents the arrest of the defendant, and the items found during the search of two bedrooms in the residence. The report indicates that law enforcement seized from the defendant's bedroom miscellaneous documents, suspected methamphetamine, a JVC compact stereo, a Nokia cellular telephone, a box, and keys. The Government also proffered DEA Form 12, entitled "Receipt for Cash or Other Items" (Gvt. Ex. 3), which lists primarily drug-related items seized from the residence.

[5]Additionally, there was some uncertainty regarding whether law enforcement seized a black athletic bag. In this regard, the Report of Investigation specified the seizure of miscellaneous documents from a large black athletic bag (Gvt. Ex. 1, p. 7 of 8, Ex. N-56). Although Agent Oliver initially seemed to indicate that law enforcement seized the athletic bag, he subsequently clarified that, consistent with the Report of Investigation, only the documents in the bag were seized by law enforcement. Agent Oliver stated that, if law enforcement had removed the bag, it would have been listed as seized property.

Although the defendant interjected during Agent Oliver's testimony that he saw Agent Carlos Montalvo "leave" with his bag, this contention is inconsistent with the defendant's testimony that he did not know who took his property, and the Report of

However, Agent Oliver testified that law enforcement did not seize the large screen television, VCR, DVD player, or gold jewelry claimed as missing by the defendant. In fact, Agent Oliver testified that he did not even recall seeing any of these items in the defendant's bedroom. Moreover, Agent Oliver stated that law enforcement does not typically seize clothing, and that it did not seize any of the defendant's clothing or shoes.

Thus, Agent Oliver summarized that the JVC compact stereo, the Nokia cellular telephone, and miscellaneous documents from a large black bag seized by law enforcement (see Gvt. Ex. 1, Exs. N-51, 52, 56) may be the same boom box, cellular telephone, and documents the defendant claims as missing. However, Agent Oliver testified, and presented supporting documentation (Gvt. Ex. 2), that those items were destroyed on August 9, 2005, following resolution of the defendant's appeal (Doc. 253). Further, Agent Oliver explained that the destruction of these items was consistent with DEA policy at that time, which permitted disposal of seized items after final

_____

Investigation which specifies the seizure of the documents, not the bag. In all events, there is no evidence that the Government has the defendant's bag, about which, it is noted, neither party has attributed any significant value. Rather, at the hearing, the defendant's focus was on the documents contained inside the bag.

disposition of the case.[6] Agent Oliver added that, if there had been a request for return of any of this property prior to its destruction, the DEA would have returned it, if it was not contraband or did not otherwise have evidentiary value. In this regard, Agent Oliver stated that he had reviewed this case file twice, and he did not find any request from the defendant for the return of these items.

During Agent Oliver's testimony, three Government exhibits, DEA Forms 6, 12, and 48a, were received in evidence (Gvt. Exs. 1, 2, 3). As indicated, the defendant did not proffer any exhibits. Agent Oliver's testimony concluded the evidence presented at the hearing.

## II.

The defendant seeks return of property pursuant to Rule 41(g), F.R.Crim.P., which provides that, "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." In this connection, the Eleventh Circuit has explained (United States v. Howell, 425 F.3d 971, 974 (11th Cir. 2005)):

---

[6] Agent Oliver testified that DEA policy has since changed, and the DEA now attempts to contact the property owner to return the property at the close of the case.

> A motion to return seized property under
> Fed.R.Crim.P. 41(g), is a motion in equity, in
> which courts will determine all the equitable
> considerations in order to make a fair and just
> decision. When an owner invokes Rule 41(g) after
> the close of all criminal proceedings, the court
> treats the motion for return of property as a civil
> action in equity.

Resolution of a Rule 41(g) motion involves a multi-step inquiry. United States v. Melquiades, 2010 WL 3314487 at *2 (11th Cir. 2010)(unpub. dec.). First, the movant must demonstrate that he is entitled to the property. Id. Then, "[t]he government may rebut the movant's allegations with evidence that it has a legitimate reason to retain the property, that it does not possess the property, or that the property has been destroyed." Id. (quotations omitted).

In order to satisfy his burden, the defendant testified at the hearing to possessions that were in his rented bedroom at the time of his arrest. It is noted, however, that the defendant's testimony in this regard was vague, and does not even substantiate his ownership of all the specific items specified in the motion.[7] For example, the defendant testified that "all of [his]

---

[7] Furthermore, the defendant testified to missing property that was not even stated in his motion, such as office equipment.

personal jewelry," and a small inventory of jewelry he sold as a side business, were missing; he did not present evidence regarding the type, style, or amount of missing jewelry.   Similarly, the defendant testified generally that his personal clothing was missing.   In contrast, the motion identifies with specificity alleged items of missing jewelry and clothing.

However, the defendant testified at the hearing that he had a written inventory of his missing property, which he intended to use at this hearing, that was misplaced in transit from prison.   Significantly, the defendant represents that this written inventory matches the list of missing items in his motion.

I am skeptical of the existence of any such list, or the accuracy of a list compiled so long after his arrest.   However, giving the defendant the benefit of the doubt, it is assumed that a written inventory which substantiates his ownership of the alleged missing items exists.   Therefore, it is assumed that the defendant has a possessory interest in the property listed in his motion for return of property.

Nevertheless, the defendant's motion is not meritorious because the Government presented substantial, credible evidence that it does not have

-11-

any of the defendant's property, and the defendant has not presented any probative evidence to the contrary. Thus, the Government's uncontroverted evidence shows that the defendant's missing possessions were either not seized by law enforcement, or were destroyed in accordance DEA policy.

As Agent Oliver testified, the items seized from the residence by law enforcement were contemporaneously documented in the Report of Investigation (Gvt. Ex. 1). Of the property seized by law enforcement from the defendant's bedroom, there were three items of little monetary value (documents, a boom box, and a cellular telephone) that possibly matched items listed as missing in the defendant's motion. That property was properly destroyed upon resolution of the appeal, in accordance with DEA policy at that time.

Furthermore, there is no probative evidence to conclude that law enforcement seized any other property identified in the defendant's motion. Thus, Agent Oliver testified that, to his knowledge, there was no property seized that was not identified in the Report of Investigation (Gvt. Ex. 1). Additionally, Agent Oliver testified affirmatively that law enforcement did not seize the defendant's clothing, and stated that he did not even see in the

-12-

.

defendant's bedroom, much less seize, the gold jewelry, television, VCR, and DVD player the defendant claims as missing.

As indicated, the defendant did not present any probative evidence to controvert Agent Oliver's testimony.   To the contrary, the defendant conceded that he does not know who took his property.

Underscoring the speculative nature of the defendant's assertion that law enforcement seized the alleged missing property is the reasonable possibility that someone else with access to his rented bedroom – such as his landlord or a co-tenant – removed his property. Thus, the defendant testified that other people resided in the home, and he did not controvert the possibility that his landlord, or another resident, took his property. Thus, the defendant's own testimony raises the fair possibility that someone other than the Government took his possessions.

In sum, the evidence shows there were possibly three items listed as missing in the defendant's motion (the boom box, cellular phone, and documents) that were seized by law enforcement.  However, those items were destroyed in accordance with DEA procedures.  Therefore, the Government has no property to return to the defendant, and no other relief is appropriate

-13-

because the Government did not act improperly in destroying those items. See United States v. Potes Ramirez, 260 F.3d 1310, 1315-16 (11th Cir. 2001)(noting that, when appropriate, the court can fashion an equitable remedy, not to include monetary damages, when property has been destroyed).

IV.

For the foregoing reasons, I recommend that the defendant's Motion for Return [of] Property Under Federal Rules of Criminal Procedure 41(g) (Doc. 275) be denied.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: FEBRUARY _7_, 2011

NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date

-14-

of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. 636(b)(1).